```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF GEORGIA
                   COLUMBUS DIVISION
```

UNITED STATES OF AMERICA,          *

vs.                                *
                                        CASE NO. 4:05-cr-21 (CDL)
MICHAEL ANTONIO NATSON,            *

    Defendant.                 *

## O R D E R

The Government has filed a Motion in Limine for Pretrial Ruling Regarding Admissibility of Out of Court Statements Made by Decedent Ardena Marie Carter (Doc. 47). For the following reasons, the Government's motion is granted in part and denied in part.

### BACKGROUND

In this case, the Government charges that Defendant, Michael Natson, murdered both Ardena Marie Carter ("Carter") and her unborn child. The Government contends that Carter was pregnant with Defendant's child, that Defendant drove Carter to Columbus, Georgia, and that Defendant shot and killed Carter on the Ft. Benning military reservation. The Government seeks to introduce certain statements made by Carter to two of her friends, Tia Clemmons and Naquanda Hayes Swanson, and statements made by Carter to her mother, Diane Croomes. The Government argues that these statements, which constitute hearsay, are admissible under two exceptions to the hearsay rule.

The Government first maintains that all of the statements are admissible under Federal Rule of Evidence 804(b)(6), which provides

that hearsay statements are admissible when the declarant is unavailable as a witness and the statement is "offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6).  The Government argues that this "forfeiture by wrongdoing" exception applies in this case because Defendant allegedly killed the witness, Carter, and has thus forfeited any right he may have to object to her statements as hearsay.  Defendant responds that this exception should not be applied in this case because the issue that must be resolved to determine the application of the exception (Defendant's role in Carter's death) is inextricably intertwined with the issue that the jury must resolve in determining Defendant's guilt. Defendant also argues that for the exception to apply the Government must establish that Defendant killed Carter *to prevent her from testifying.*

In addition to the forfeiture by wrongdoing exception, the Government maintains that some of the statements are admissible because they fall within the well recognized "then existing mental, emotional, or physical condition" exception to the hearsay rule. Fed. R. Evid. 803(3).  If a statement is admissible under this exception, it is unnecessary for the Court to determine whether Defendant procured the unavailability of the witness.

2

THE HEARSAY STATEMENTS

The proffered testimony that the Government seeks a ruling upon is as follows:

<u>Statements to Tia Clemmons</u>

1. Carter told Clemmons that Carter met Defendant in February 2003, and developed a romantic relationship with him.  The Government contends that this statement is admissible under Federal Rule of Evidence 804(b)(6).

2. In March 2003, Carter told Clemmons that Carter was pregnant with Defendant's child.  The Government contends that this statement is admissible under Federal Rules of Evidence 803(3) and 804(b)(6).

3. During the summer of 2003, Carter told Clemmons that Carter saw less and less of Defendant and that Defendant had stopped accepting her phone calls.  The Government contends that this statement is admissible under Federal Rule of Evidence 804(b)(6).

4. Carter told Clemmons that (1) Carter told Defendant's mother about the baby, and (2) after she did, Defendant told Carter not to contact his mother any more.  The Government contends that this statement is admissible under Federal Rule of Evidence 804(b)(6).

5. On the evening of September 11, 2003, Carter called Clemmons and they had a general conversation, but during this conversation,

3

    Carter said nothing about Defendant coming over that evening or that she had to go to school the next day. The Government contends that these statements are admissible under Federal Rules of Evidence 803(3) and 804(b)(6).

6. During the early morning of September 12, 2003, Clemmons received another call from Carter while Carter and Defendant were stopped to get gas. During that conversation, Carter told Clemmons that (1) she was with Defendant, (2) that she and Defendant were on their way back to Columbus to get her a car, (3) that she had to be back by 7:00 a.m. to go to work, and (4) that she had her "stuff" with her so she could go directly to work from Columbus. Carter also told her that it would take a couple of hours to travel to Columbus and a couple of hours to return to Statesboro. The Government contends that these statements are admissible under Federal Rules of Evidence 803(3) and 804(b)(6).

Statements to Naquanda Hayes Swanson

1. In late spring 2003, Carter told Swanson that Defendant was the father of Carter's child and that she wanted to marry Defendant. The Government contends that this statement is admissible under Federal Rules of Evidence 803(3) and 804(b)(6).

2. Carter told Swanson that Defendant was not coming around as much because of military responsibilities. The Government contends

4

    that this statement is admissible under Federal Rule of Evidence 804(b)(6).

3. In Summer 2003, Carter told Swanson that Defendant refused to tell his parents about Carter's pregnancy. Therefore, Carter took the initiative and told Defendant's mother about the pregnancy. Additionally, Carter told Swanson that Defendant got upset about her telling his mother. The Government contends that these statements are admissible under Federal Rule of Evidence 804(b)(6).

4. In September 2003, on the Sunday before Carter's disappearance, Carter told Swanson that Defendant was 'tripp'n' (very upset) about the baby. The Government contends this statement is admissible under Federal Rules of Evidence 803(3) and 804(b)(6).

Statements to Diane Croomes

1. Carter told Croomes that Defendant was visiting Carter's apartment and Carter let him feel the baby move. Defendant became very upset after feeling the baby move and had to lay down and rest for a while. As Defendant left, he told Carter they would talk about it later. The Government contends these statements are admissible under Federal Rule of Evidence 804(b)(6).

2. In another conversation, Carter told Croomes that Carter was going to talk to Defendant about obtaining military benefits for herself and the unborn child. The Government contends that

>   these statements are admissible under Federal Rules of Evidence 803(3) and 804(b)(6).

3. On another occasion, Croomes was talking to Carter when Carter terminated the phone call because Defendant arrived at her apartment. In a return call, Carter told Croomes that she and Defendant were going to return a baby stroller he had purchased from Wal-Mart in Statesboro. The Government contends that this statement is admissible under Federal Rule of Evidence 804(b)(6).

4. On the same return call referred to above, Carter told Croomes that Defendant had shown Carter paperwork for a car he had purchased for Carter in Columbus, and that he would take her to get it soon. The Government contends that this statement is admissible under Federal Rules of Evidence 803(3) and 804(b)(6).

## DISCUSSION[1]

Preliminarily, the Court makes the following findings: It is undisputed that the declarant, Carter, is unavailable to testify. It is further undisputed that she became unavailable prior to the Defendant being arrested or indicted. The Government contends that the Defendant procured Carter's unavailability by murdering her and

---

[1] In this discussion, the Court will refer to the hearsay statements by identifying the witness who plans to testify that the statement was made and the number of the statement as set forth in the previous section of this order (e.g., Clemmons No. 1, Swanson No. 3).

alleges that the conduct that procured Carter's unavailability is the same exact conduct for which the Defendant is indicted in this case.

The Court further finds that each of the statements the Government seeks to have admitted is non-testimonial in nature. *United States v. Brown*, 441 F.3d 1330, 1360 (11th Cir. 2006). Therefore, if the statements are admissible under one of the hearsay exceptions, their admission does not violate Defendant's rights under the Confrontation Clause.[2]  *Davis v. Washington*, -- U.S. --, 126 S. Ct. 2266, 2273-76 (2006).

A. Rule 803(3)-Then Existing Mental, Emotional, or Physical Condition

Rule 803(3) of the Federal Rules of Evidence provides that the following statements are not excluded by the hearsay rule:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will.

The Government contends that the following statements are admissible under Federal Rule of Evidence 803(3): Clemmons Nos. 2, 5,

---

[2] The Supreme Court has made it clear that only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*. -- U.S. --, 126 S.Ct. 2266, 2273 (2006) (citation omitted). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id.* Consequently, if a statement is non-testimonial, its admission does not implicate the Confrontation Clause. Thus, having determined that the statements are non-testimonial, the relevant inquiry in resolving the present motion is whether the statements fall within a hearsay exception.

7

and 6; Swanson Nos. 1 and 4; and Croomes Nos. 2 and 4. The Court will analyze each of these statements to determine whether they are admissible as a statement of the declarant's then existing mental, emotional or physical condition.

Clemmons No. 2 and Swanson No. 1 are essentially the same statement made to two separate witnesses on separate occasions. In each statement, Carter told her friends that she was pregnant with Defendant's child. These statements are clearly a statement of Carter's then existing physical condition. Furthermore, Carter's additional remark to Swanson that she wanted to marry the Defendant is a statement of her then existing state of mind. Accordingly, these two statements (Clemmons No. 2 and Swanson No. 1) qualify as exceptions to the hearsay rule under Federal Rule of Evidence 803(3). However, this finding does not end the inquiry. These statements must also be relevant to be admissible. The Government argues that these statements are relevant as to Defendant's motive for killing Carter—he wanted to eliminate all of the problems associated with an unwanted pregnancy. The Court finds that these statements would be relevant if the Government presents evidence showing that the Defendant was aware that Carter was pregnant with his child or that he was aware that Carter claimed to be pregnant with his child.

Croomes No. 2 and Swanson No. 4 also relate to Carter's pregnancy. In Croomes No. 2, Carter informs her mother that she is going to talk to the Defendant about obtaining military benefits for

herself and her unborn child.  This statement was clearly made as part of Carter's plan in dealing with her pregnancy and how it would involve the Defendant.  It is a statement of her then existing state of mind.  Consequently, it qualifies as an exception to the hearsay rule under Rule 803(3).  The Court further finds that the statement is relevant to Defendant's motive and is thus admissible.

Carter's statement to Swanson (Swanson No. 4) is more complicated.  In that statement, Carter informs Swanson that the Defendant was "tripp'n" about the baby.  This statement involves Carter's observation of Defendant's reaction to the pregnancy.  While Defendant's reaction (that he was tripp'n) may have been a statement of *Defendant's* then existing state of mind, it was not a statement of *Carter's* then existing state of mind.  Carter was simply relaying her observation of Defendant's state of mind.  Therefore, the Court finds that this statement was not a statement of Carter's then existing mental, emotional or physical condition.  Consequently, the statement is not admissible under Federal Rule of Evidence 803(3).

The remaining statements that the Government seeks to be admitted under Federal Rule of Evidence 803(3) relate to the trip to Columbus on the night of Carter's disappearance.  On the evening of September 11, 2003, Carter allegedly called Clemmons and they had a general conversation in which nothing was said about the Defendant coming to see Carter that evening or Carter having to go to school the next day. (Clemmons No. 5).   Then during the early morning of September 12,

9

2003, Carter allegedly called Clemmons again and told her she was presently with the Defendant, that they were stopped to get gas, that they were on their way to get her a car in Columbus, that she had to be back to Statesboro by 7:00 A.M. for work, that she had her "stuff" with her so she could go to work directly from Columbus, and that it would take a couple of hours to travel to Columbus and a couple of hours to return to Statesboro. (Clemmons No. 6).  The Court finds that these statements (Clemmons No. 6) are statements of Carter's then existing state of mind and plan regarding the trip from Statesboro to Columbus and back.  Therefore, these statements qualify as exceptions to the hearsay rule under Rule 803(3).  The Court further finds that the previous conversation in which nothing was said about the trip to Columbus (Clemmons No. 5) is an indication that Carter had no plan to travel to Columbus and back as of the time of that first telephone call.  Accordingly, the Court finds that this statement qualifies as a hearsay exception under Rule 803(3).  The Court further finds that these statements are relevant as to the presence of Defendant with Carter on the evening of Carter's disappearance.  Therefore, the statements are admissible.

   In a related call to her mother, Carter allegedly told Croomes that Defendant had shown Carter paperwork for a car he purchased for her in Columbus, and that he planned to take her to get it soon. (Croomes No. 4).  This statement does not reveal Carter's then existing state of mind, but instead expresses her observation and

10

understanding of the Defendant's state of mind and plan. Accordingly, the Court finds that this statement does not qualify as an exception to the hearsay rule under Federal Rule of Evidence 803(3).

B.  Rule 804(b)(6)-Forfeiture by Wrongdoing

The Government contends that all of the statements described in this order are admissible under Federal Rule of Evidence 804(b)(6). Rule 804(b)(6) is a relatively new exception to the hearsay rule, having been codified in 1997. It provides that a hearsay statement is not excluded if the declarant is unavailable and the statement is offered against a party who "has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6). The purpose of this exception is obvious. A party who, through wrongdoing, procures the absence of a witness should not be able to benefit from that wrongdoing. *United States v. Zlatogur*, 271 F.3d 1025, 1028 (11th Cir. 2001); *United States v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir. 1996). Therefore, if it is established that the party, through wrongdoing, procured the unavailability of the witness, that party has forfeited his right to assert hearsay objections to the admission of the unavailable witness' prior statements. *United States v. Williams*, 443 F.3d 35, 46 (2d Cir. 2006); *United States v. Montague*, 421 F.3d 1099, 1102 (10th Cir. 2005); *Zlatogur*, 271 F.3d at 1028; *United States v. Emery*, 186 F.3d 921, 926 (8th Cir. 1999).

Most of the cases applying this exception to the hearsay rule do not involve a situation like the present case where one of the issues to be resolved in determining if the exception applies (whether the Defendant killed the witness) is the same issue that must be decided by the jury in determining the Defendant's guilt in the underlying crime. *See, e.g., Montague*, 421 F.3d at 1100-04 (applying forfeiture by wrongdoing exception to admit grand jury testimony of defendant's wife, in felon in possession of a firearm case, where court found by a preponderance of the evidence that defendant had procured his wife's unavailability as a witness); *United States v. Garcia-Meza*, 403 F.3d 364, 369-71 (6th Cir. 2005) (applying exception where the defendant confessed to the murder of the declarant and issue at trial was whether the defendant acted with premeditation); *Zlatogur*, 271 F.3d at 1028-29 (applying exception to conspiracy to violate immigration laws case where the defendant threatened and intimidated witness). Although the circumstances in the present case may not be typical of those in cases where this exception has been applied, the Court can find nothing in the Rule or other binding or persuasive authority to support the conclusion that Rule 804(b)(6) should not apply to a homicide case where the unavailable hearsay declarant also happens to be the victim of the homicide. The Court can discern no reason that a homicide victim's statements should not be admissible if the party against whom the statements are to be used committed the homicide, at least in part, to prevent the victim's testimony. It would be folly

to exclude such evidence, and yet admit into evidence in a homicide case hearsay statements of a witness (not the victim of the underlying crime) who the defendant threatened and scared into leaving the country.  *See generally Emery*, 186 F.3d 921; *Zlatogur*, 271 F.3d 1025. Accordingly, the Court finds that the nature of this case does not prevent the application of Federal Rule of Evidence 804(b)(6) to admit hearsay statements made by Carter prior to her death.

The Court obviously cannot decide today that the statements in question are admissible under Rule 804((b)(6).  An evidentiary hearing will be necessary to determine whether the Government can carry its burden of establishing that the Defendant procured the unavailability of Carter for purposes of this exception.  To avoid future confusion the Court finds it appropriate to explain the standard it intends to apply in determining whether the statements will be admitted.  The Court finds that for the exception to apply, the Government must convince the Court with evidence presented at the hearing that Defendant procured Carter's unavailability as a witness.  The Government must show more than the Defendant killed Carter, but that he killed her *to make her unavailable as a witness*.  This conclusion is derived from the plain language of the Rule itself—"[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant *as a witness*." [Emphasis added].  Fed. R. Evid. 804(b)(6). The Rule requires more than just that Defendant procured the

13

declarant's unavailability; it requires that Defendant intended to procure the declarant's unavailability "as a witness."[3]

The Government argues that *United States v. Garcia-Meza*, 403 F.3d 364 (6th Cir. 2005), requires a lower burden–that the Government does not have to show that Defendant intended to prevent the declarant from being a witness, but that he simply killed her. The Court finds this argument unpersuasive. The Government confuses the forfeiture by wrongdoing exception to the Constitution's Confrontation Clause with the forfeiture by wrongdoing exception to the Federal Rules of Evidence hearsay rules. The two exceptions are similar, but not identical. *Garcia-Meza* involved the application of the forfeiture by wrongdoing exception to the Confrontation Clause, not Federal Rule of Evidence 804(b)(6). It is correct that for Confrontation Clause purposes a defendant who eliminates a witness forfeits any constitutional right to confront that witness later regardless of the defendant's motive. However, Federal Rule of Evidence 804(b)(6) is

---

[3]Requiring the Government to show that Defendant intended to procure the victim's unavailability as a witness is in accord with decisions in those circuits that have addressed the issue. *See, e.g., United States v. Gray*, 405 F.3d 227, 242 & n.9 (4th Cir. 2005) ("[T]he intent requirement in Rule 804(b)(6) continues to limit application of the forfeiture-by-wrongdoing exception to those cases in which the defendant intended, at least in part, to render the declarant unavailable as a witness against him."); *United States v. Dhinsa*, 243 F.3d 635, 652 (2d Cir. 2001) ("By its plain terms, Rule 804(b)(6) refers to the intent of a party to procure the unavailability of the *witness* . . . ."); *United States v. Thevis*, 665 F2d. 616, 633 n.17 (5th Cir. 1982) (explaining that for a defendant to waive his hearsay objections based on wrongdoing, the Government must show that "(1) the defendant caused the witness' unavailability (2) for the purpose of preventing that witness from testifying at trial") (superceded by statute on other grounds).

narrower than this Confrontation Clause exception.  In fact, the Court in *Garcia-Meza* recognized this distinction.  As observed by that Court, "the Federal Rules of Evidence may contain [] a requirement" that the defendant "intended to prevent the witness from testifying." *Garcia-Meza*, 403 F.3d at 370.

The Court finds that requiring the Government to establish that Defendant killed Carter to eliminate her as a witness complies with the plain language of the Rule, is consistent with the Rule's underlying purpose, and provides an indicia of reliability that underlies most hearsay exceptions. As previously discussed, the plain language of the Rule clearly links the forfeiture of the hearsay objection with the elimination of the witness *as a witness.*  The rule requires a finding that the "wrongdoing . . . was intended to, and did, procure the unavailability of the declarant *as a witness*."  Fed. R. Evid. 804(b)(6) (emphasis added).   Under the Government's interpretation of the rule, the final phrase "as a witness" is superfluous.  Elementary principles of statutory construction caution that "[a] statute should be interpreted so that no words shall be discarded as meaningless, redundant, or mere surplusage."  *United States v. DBB, Inc.,* 180 F.3d 1277, 1285 (11th Cir. 1999) (citation and internal quotation marks omitted).  As a matter of statutory construction, it is clear that the language of the Rule requires a showing that the party intended, at least in part, to eliminate the witness *as a witness.*

15

This construction of Rule 804(b)(6) is also consistent with the underlying purpose of the Rule which is to deny a party the benefit of, and to deter a party from, "knocking off" a witness. It is not designed to provide an additional sanction for the homicide of someone who may have been a witness had they not been killed. Since the purpose of the exception is to deny the party the benefit of his conduct of intentionally eliminating a witness and to deter parties from seeking to eliminate witnesses, it follows that for the exception to apply there must be some connection between the party's motive and his elimination of the witness. *United States v. Scott*, 284 F.3d 758, 762-65 (7th Cir. 2002); *Emery*, 186 F.3d at 926; *Houlihan*, 92 F.3d at 1280.

Finally, requiring this connection between motive and elimination of the witness establishes some indicia of reliability for a statement that would otherwise traditionally be considered unreliable because of its hearsay nature. If a defendant eliminates someone because he is concerned that the person may testify against him, the defendant's own conduct reveals that the defendant considers what the witness may have to say to be both relevant and reliable. The defendant's motivation provides an indicia of reliability regarding the statement that offsets the otherwise unreliable nature of traditional hearsay statements. This construction of the Rule is therefore consistent with the underlying rationale for most hearsay exceptions—that due to the circumstances surrounding them, additional indicia of reliability

exist to offset the concerns typically associated with hearsay type statements.

In summary, the Court finds that to carry its burden and have the Rule 804(b)(6) exception apply, the Government must persuade the Court in this case that Defendant killed Carter and that part of his motivation was to eliminate her as a witness against him. This interpretation of the Rule is consistent with the Rule's plain meaning. It also advances the purpose underlying the Rule—preventing the Defendant from benefitting from his wrongful conduct while reasonably assuring that the hearsay statement has some indicia of reliability. Accordingly, an evidentiary hearing is hereby scheduled for 9:00 A.M. on January 8, 2007 to determine whether the following statements are admissible under Federal Rule of Evidence 804(b)(6): Clemmons Nos. 1, 3, 4; Swanson Nos. 2, 3, 4; Croomes Nos. 1, 3, 4.

## CONCLUSION

The following statements shall be admissible under Federal Rule of Evidence 803(3): Clemmons Nos. 2, 5, 6; Swanson No. 1; and Croomes No. 2. An evidentiary hearing is scheduled for January 8, 2007 to receive evidence on the issue of whether the following statements are admissible under Federal Rule of Evidence 804(b)(6): Clemmons Nos. 1, 3, 4; Swanson Nos. 2, 3, 4; Croomes Nos. 1, 3, 4.

IT IS SO ORDERED, this 22nd day of November, 2006.

S/Clay D. Land<br>
CLAY D. LAND<br>
UNITED STATES DISTRICT JUDGE